[Civ. No. 12468. Second Appellate District, Division Two.—May 20, 1940.]

HENRY GROSS, Appellant, v. WILLIAM R. MOLONY, President of Board of Medical Examiners, etc., et al., Respondents.

J. H. Morris for Appellant.

Earl Warren, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondents.

WOOD, J.—Petitioner has been for many years practicing in the city of Los Angeles a system of healing known as naturopathy. He seeks by this proceeding to secure a writ of mandate directing respondent board of medical examiners of the State of California to set aside and dismiss charges of unprofessional conduct which were filed against him and to refrain from preventing him from prescribing for patients in the manner set forth in his petition. The superior court sustained the demurrer of the respondents and dismissed the petition for the writ. From this order the appeal is prosecuted. Attached to the petition for the writ as exhibits are copies of two complaints which had been filed with the board and a statement of all the evidence received by the board at the hearing upon the charges. The board found petitioner guilty of the violation of section 2378 of the Business and Professions Code and placed him on probation for the term of three years.

Petitioner now contends that respondent board is without jurisdiction over naturopaths and has no authority to place him on probation or to revoke his license. Before 1909 no statute was in force providing for the licensing of naturopaths. It was provided in chapter 276 of the Statutes of 1909 that any person holding "an unrevoked certificate" issued by the board of examiners of the Association of Naturo-

paths of California, incorporated under the laws of the State of California, August 8, 1904, and who shall have practiced naturopathy prior to the passage of the act should continue to be entitled to practice naturopathy and that the board of medical examiners should endorse their certificates within six months from the date of the passage of the act. It was also therein provided: ''But all certificates herein mentioned may be revoked for any unprofessional conduct, in the same manner and upon the same grounds as if they had been issued under this act.'' Naturopathy was not defined in the statutes of 1909.

The legislature in 1913 enacted chapter 354 of the statutes of that year, which repealed the Medical Practice Act theretofore existing, created a new board of medical examiners, and for the first time provided for the issuance of licenses to so-called drugless practitioners. In this law the provisions relating to naturopaths were eliminated, and since its enactment persons who desire to be licensed to engage in drugless methods of healing, such as naturopathy, must secure a drugless practitioner's certificate from the board of medical examiners. The Medical Practice Act was codified in the year 1937 and became a part of the Business and Professions Code.

The legislature by comprehensive enactment has provided for the licensing and regulation of all engaged in the various healing arts. We are satisfied that it was the intent of the legislature that the endorsement of a certificate of a naturopath, as provided in the statutes of 1909, should be held to be the issuance of a license to the party whose certificate was endorsed. This is apparent from the express provisions in the act that certificates therein mentioned could be revoked for unprofessional conduct ''as if they had been issued under this act''. It would be unreasonable to contend that all persons engaged in curing human ailments are subject to regulation except the small number who were practicing naturopathy in 1909.

Petitioner also contends that the evidence presented before the board is insufficient to justify a finding of his guilt of violating section 2141 of the Business and Professions Code, which section provides that it is a misdemeanor for any person to practice a system or method of treating the sick without having at the time a valid certificate so to do. It is set forth in the petition that in accordance with the

articles of ·incorporation of the Association of Naturopaths, the "Materia Medica of said Association is, and its members are authorized to treat patients by use of 'light, air, water, clay, heat, besides exercise, rest, non-stimulating diet, herbs, electricity, massage, Swedish movements, suggestive therapeutics, chiropractic, magnetism, physical and mental culture, etc., etc'." It is argued that petitioner did nothing which was not authorized in accordance with these articles of incorporation. At the hearing before the board evidence was introduced concerning the treatment of two parties, Mrs. Keeney and Mrs. Hathaway. In the case of Mrs. Keeney it was shown that the patient was a sufferer from arthritis. The transcript of the hearing before the board discloses testimony as follows: "He (petitioner) prescribed two different bottles of capsules at $10 each, one to be taken at the beginning of the meal and the other before the finish of the meal. In about 30 days he gave her another type of medicine in a bottle which contained about 100 capsules at $10, and it is marked, 'Raw Endocrine Products Ltd., 1403 West Florence Avenue, Twinoaks 3819', and written on below, 'Mrs. Keeney, No. 7349, one capsule with meals, Dr. Henry Gross, 10–26–38—.' Another bottle, which Mrs. Keeney received, was marked, 'Mrs. Keeney, October 27, 1938, Mixed Vitamins, take 2 tablets 3 times a day, with each meal, 100 tabs.,' this appearing in typewriting". Mrs. Hathaway was treated for a disorder of her thyroid gland and lower colon. The transcript also discloses this testimony: "That he wrote a prescription for her and sent her to the Raw Endocrine Products, Ltd., 1403 West Florence Avenue, Los Angeles. That, on a presentation of the prescription to the Raw Endocrine Products Ltd., at the address referred to, Mrs. Hathaway was given a capsule of grayish powder". It was stipulated that Mrs. Keeney if called as a witness would testify that she was directed by Dr. Gross to purchase a product known as Alpha Naphco. By stipulation the matter on the label of the bottle containing the product was made a part of the record and was read by the deputy attorney-general: "Alpha Naphco, formerly Benetol. Activity—(spelling) Phen. coef.—I imagine that is 'coefficient.' (continuing reading:) '—H. L. Test 1.46. Phenol coefficient against yellow pus germs in ½ blood serum ½ saliva at body heat 3.11. Inert Ingredient—Inred.—' It reads here—(continuing read-

ing:) 'Glycerine 32%, Water 40%. Contents—Not less than six ounces liquid. Carel Laboratories, Redondo Beach, California, Formerly Benetol Products Co.' ''. It was also stipulated that R. W. MacCorkell would, if present, testify that he is a chemist, and ''that the substance which he received as that given Mrs. Keeney by Dr. Gross and that substance given Mrs. Hathaway is a beef or muscle substance but that it may be a medicine, a chemical or compound found in materia medica, and is not composed of herbs in their natural form.''

It was the function of respondent board to pass upon charges that petitioner was guilty of violating the Business and Professions Code and its findings must be sustained if substantial evidence was presented to the board to support the charges coming before it. We are satisfied that the evidence above stated was sufficient to sustain the findings of the board and that the superior court ruled correctly in dismissing the petition. It would not be necessary to call experts to convince the board, whether composed of medical men or not, that the prescription of capsules of grayish powder and a liquid with a large content of glycerine, could not be classified as the use of ''herbs'' or of any other means which naturopaths are authorized to employ.

The order dismissing the petition for a writ of mandate is affirmed. The purported appeal from the order sustaining the demurrer is dismissed.

Moore, P. J., and McComb, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 18, 1940.